**JARMAN et al. v. EIGHTEEN PETROLEUM CO. et al.**

No. 3908.

Court of Civil Appeals of Texas. Texarkana.

Nov. 27, 1930.

Tipps & Puckitt and R. G. Storey, all of Dallas, for appellants.

Z. J. Spruiell, Jr., and Tomas G. Pollard, both of Tyler, and Tom L. Beauchamp, of Paris, for appellees.

HODGES, J.

Some time during the year 1927, W. T. Jarman and his wife, Matilda Jarman, purchased a tract of approximately 145 acres of land situated in Van Zandt county, and in what is now known as the "Van oil field territory." W. T. Jarman died on September 16, 1928, leaving his wife, Matilda, and nine children. At the time Jarman died there were no debts against his estate, and all of his surviving children were over the age of twenty-one years. A short time prior to his death, Jarman and wife had executed a mineral lease of their land to the Pure Oil Company, the lessors reserving a right to one-eighth of all the oil and gas that might be produced from wells located on the land. In December following the death of her husband, Mrs. Jarman was appointed community administratrix of the community estate of herself and her deceased husband. The estate consisted of the tract of land above mentioned and a small amount of personal property. On June 6, 1929, Mrs. Jarman "individually and as community survivor and administratrix of the estate of herself and deceased husband" sold and conveyed "an undivided one thirty-second (the same being one-fourth of the one-eighth) interest in and to all of oil, gas and other minerals in and under" the tract of land above mentioned to the Eighteen Petroleum Company. The consideration paid for that conveyance was $1,750 in cash or something over $50 per acre. Some time later a producing well was sunk on the Jarman land and the mineral interests became much more valuable. After the death of W. T. Jarman two of his children died, leaving some minor children.

This suit was filed by Mrs. Jarman and her children and grandchildren to cancel the conveyance made to the Eighteen Petroleum Company. The grounds upon which the cancellation is sought is thus stated by counsel for appellants in their brief:

"Appellants allege that said conveyance was procured by false and fraudulent representation, and that appellant Mrs. Matilda Jarman, being an elderly lady and being totally inexperienced in oil and business matters, had entrusted her business affairs to her oldest son, Will Jarman, then about forty-eight years of age; that when the representatives of the appellees approached the appellant Mrs. Jarman, she referred them to her son Will, who lived several miles away, stating to them that she would do whatever he said regarding the sale; that the agents of appellees did go to her son Will Jarman and endeavored to obtain his consent to sell the property and returned to Mrs. Jarman's home the next morning, stating to her that her son Will did not object to her selling the minerals; that said statements of what her son Will said, by the agents of appellees, were false and fraudulent; that her son Will did not give his permission for her to sell the minerals in question on the terms stated; but on the contrary, had refused to give his consent; that said statements made by the agents of appellees were false and fraudulent and made for the purpose of deceiving and defrauding appellant Mrs. Matilda Jarman out of her one-fourth mineral rights; that had she not relied upon said representations, she would not have sold the same.

"Appellants further contended in their petition in the court below that the conveyance to at least one-half the minerals purported to be conveyed was void and invalid for this: that W. T. Jarman, the husband of appellant Mrs. Matilda Jarman, died in the fall of the year 1928; that at the time of his death all of his children were more than twenty-one years of age; that he owed no debts and that no debts were due and owing to the estate, and that there was no necessity whatever for an administration and that the purported administration upon the estate of W. T. Jarman, deceased, and his surviving widow, Mrs. Matilda Jarman, was absolutely void because (1) all of his children were of age at the time of his death; (2) no debts were due to the estate and none owing by the estate, and (3) because no necessity existed for the purported administration, all of which appeared upon the face of the community probate proceedings."

At the conclusion of the testimony, the court directed the jury to return a verdict for the defendants. That was done and an appropriate judgment accordingly rendered.

It is contended in this appeal, first, that the evidence made an issue of fraud which should have been submitted to the jury; and, second, that there was no competent evidence of the appointment of Mrs. Jarman as community administratrix of the community estate of herself and her husband, and for that reason her children and grandchildren are not bound by her contract of conveyance.

As to what induced her to execute the contract involved in this controversy, Mrs. Jarman testified, in substance: That her son, Will, lived about two and one-half miles from her, and that she depended on him to look after her business affairs. Mr. Fowler, the agent of the Eighteen Petroleum Company, went to see her several times during the

year 1928, about selling some of her oil rights. She did not know who Fowler was acting for. He called to see her the day before the contract was executed. He was accompanied by Mr. Kennon whom she had never seen before. Fowler told her that he was buying for another man. She said: "I told him I wouldn't sell the royalty at all unless he would go to see Will Jarman, and I said, 'For God's sake, don't come here any other time,' to go to see Will, and that if Will said sell I would let him have it, and if Will said for me not to let him have it, I said, 'For God's sake, don't come back here any more.' " Fowler left her house late in the evening and returned early the next morning accompanied by Kennon. Witness was in the house at the time they came and when informed that they had arrived, she asked them, " 'What did Will say?' and he (Fowler) says, 'He didn't say much of anything,' and he sorter dropped his head, 'and he said you could sell it if you want to, and that he didn't care what you done.' "

On cross-examination Mrs. Jarman admitted that she looked after most of her own business affairs. She purchased her own groceries, conducted her own personal business without consulting Will.

Will Jarman testified: That after his father's death he looked after business matters with reference to the farm. That was done at the instance of his brothers. He was instrumental in having his mother appointed community administratrix in order that they might sell a few acres of their land to pay the funeral expenses of a deceased brother. Fowler went to see him along in June and said he wanted to buy some of the royalty, saying that he had seen Will's mother. "I said, 'I told her to tell you not to come down here,' and he said, 'I didn't have anything else to do and I thought I would come and talk with you about it.' I says, 'You can't buy it from me,' and he said 'That's mighty good, we will give you $1,775.00 for one-fourth of the royalty,' and I says, 'No, sir, you can't buy it from me, and don't you go back and try to buy it from her; mother is old and childish and she has been tormented to death.' * * * It was early in the morning before Fowler came to see me that I talked to my mother over the phone. In that conversation she told me that there were some parties there—Fowler among them,—wanting to buy this royalty, and I said, 'You are not going to sell it, are you?' She said, 'No, but they are trying to buy it,' and she says, 'Fowler wants to see you,' and I said, 'I don't want to see him.' She said, 'He said he was going up there,' and I said, 'There ain't any use for him to come out here,' but he came anyway to the back of the field where I was plowing, and it was there he and I had the conversation I have just detailed."

The evidence further shows that, before the contract was executed by Mrs. Jarman, she went to Grand Saline and there conferred with some bankers about the propriety of selling her mineral rights. One of them advised her to sell. The other told her, in effect, that it might be a good bargain or it might not. She was in search of her bondsmen, she said, but did not find them. She then went to Canton, the county site, where, after conferring with Judge West, she signed the conveyance.

The evidence is undisputed that Mrs. Jarman was given full opportunity to advise with any persons she saw proper as to the propriety of accepting the offer that has been made her. It further appears that she received the highest market price at that time for the mineral rights she conveyed. The money was paid to her by check, and, before the check was cashed, she conferred with her son Will, and also with some of the other children, and there is no evidence that any of them made any objections. After the check was deposited in the bank, each one of the children was paid his or her share of the proceeds of the sale, and each accepted it without any protest or objection.

■ We think the court correctly concluded that the evidence was insufficient to support a finding that Mrs. Jarman had been imposed on and fraudulently induced to sign the conveyance. There is no evidence that she was mentally incompetent to transact her own business. She had, only a few months before that transaction occurred, been appointed community administratrix of the estate left by her deceased husband. The appointment was made at the instance of her oldest son Will. That was done in order that she might have the management of the property and make any sale she thought proper for the interest of the estate. If the testimony of her son Will be true, she must have known at the time she executed the conveyance that he was not willing for the sale to be made. Will Jarman lived within a few miles of his mother, and the evidence indicates that there was telephone connection between the two. If she so desired, she had an opportunity to confer with him before the sale was completed.

The children and grandchildren of W. T. Jarman, who are appellants in this case, insist that they are not bound by the conveyance executed by Mrs. Jarman because her appointment as community administratrix was a nullity. During the trial the appellees, over the objection of appellants, introduced in evidence the probate record of the application and appointment of Mrs. Jarman as community administratrix. The grounds of the objection were that those proceedings were void, and that their invalidity was apparent upon the face of the record.

■ We do not think it is necessary to discuss the validity of those proceedings. At

the time that conveyance was executed, Mrs. Jarman owned, in her own right, one-half of the land, including one-half of the royalty that would be due under the lease to the Pure Oil Company. She undertook to convey only one-fourth of that royalty which was less than the interest she owned individually. Her contract expressly bound her individually as well as in her representative capacity. The purchaser, therefore, took a good title to one-fourth of the royalty, even though Mrs. Jarman may not have been authorized by a valid appointment as community administratrix to convey more than her one-half interest. If the purchaser acquired a good title to one-fourth of the royalty from her individually under that contract of conveyance, certainly that conveyance should not be disturbed. If the purchaser acquired a good title, he is not responsible in damages in this proceeding for claiming what he owned.

It is true, as contended by appellants, that the purchase money was divided among the children and grandchildren upon the assumption that a portion of their respective interests had been conveyed. It is also true that Mrs. Jarman intended to convey a portion of their interest as well as a portion of her own; but that fact is of no controlling importance. It is what the parties in legal effect did, and not what they intended to do, that determines their rights and liabilities in this proceeding.

The judgment will therefore be affirmed.